WILLIAM McGROARTY *vs.* NICHOLAS FERRETTI.

APRIL 16, 1936.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

PER CURIAM. This is a petition in equity in the nature of *quo warranto*, brought under the provisions of general laws 1923, chapter 379, section 1, to determine the right and title to the office of city auditor of the city of Warwick.

The respondent is the present acting city auditor of that city, and holds a certificate of appointment to the office in dispute, bearing date of July 23, 1935, and duly issued by the clerk of the city council of Warwick. The petitioner is

seeking to oust the respondent from this office on the ground that he was not properly appointed thereto. The petitioner is also asking the court to confirm him in the office in question by reason of his right and duty to hold over from a previous term until his successor is properly chosen or appointed.

This cause was heard by us on an agreed statement of certain facts and on oral testimony. From this record it appears that the petitioner was appointed city auditor of Warwick on January 2, 1933, for the term of two years, and performed the duties of that office. In public laws 1931, chapter 1852, sec. 18, being the act comprising the city charter of Warwick, it is provided that: "All officers of the city of Warwick, unless otherwise provided herein, and all officers chosen or appointed by virtue of any ordinance under the same, shall hold their respective offices until their successors have been chosen or appointed as herein provided."

No attempt was made to name a successor to the petitioner in the office in question until July 23, 1935. On that date, a regularly adjourned meeting of the city council of Warwick was held, presided over by the mayor of the city under the provisions of sec. 3, clause 4, of the Warwick city charter act, *supra*. That act in sec. 9 provides that all appointments or elections of officers by the city council shall be made in a certain manner, and that each officer shall be nominated by the mayor and confirmed by the city council, with a further proviso as to procedure if the mayor's nominee shall fail of confirmation. In sec. 8, clause 2 of the Warwick city charter act, *supra*, the officers to be appointed by the city council are designated, the city auditor being one of them. At the meeting held on July 23, 1935, the mayor nominated the respondent to the office of city auditor. The issue in this cause is whether or not this nomination was properly confirmed by the city council. The petitioner argues that it was not, while the respondent urges the opposite contention.

A question is raised by the respondent regarding the right of the petitioner to maintain this proceeding. It is urged that the latter has not a sufficient interest in the office involved to authorize him to bring the petition in his own name, and without the intervention of the public authorities, because he is merely holding over his term and until his successor is appointed. The respondent's contention in this connection is not sound. This is an action under the statute, being a petition in equity in the nature of *quo warranto*, and not a request for the issuing of the common law writ, concerning which strict rules of procedure apply. We are of the opinion that the petitioner has a sufficient personal interest in the disputed office so that he is entitled to maintain this petition in his individual capacity. Such has been the general holding in other jurisdictions when a similar situation has arisen. *Cadwell* v. *Teaney*, 199 Ind. 634; *Lee* v. *Byrd*, 151 S. E. (Ga.) 28.

In regard to what transpired at the city council meeting of July 23, 1935, the petitioner first contends that there was so much noise and confusion, chiefly from the spectators, while the meeting was in progress, that it was out of control; that a majority of the council members could not hear and did not know what business was being transacted; that the meeting was so disorderly that the council lost its character as a deliberative body; and that, because of those conditions, there was no valid confirmation by the council of the mayor's appointment of the respondent to the office of city auditor. The petitioner also maintains that when the question of the confirmation of that appointment was put to a voice vote by the mayor, six members of the council, constituting a majority of that body, voted in the negative, and further that a sufficient number of members of the council, under its rules, demanded a roll call vote before the presiding officer had announced the result of the voice vote. It is contended on behalf of the petitioner that, regardless of this situation, the mayor as presiding officer acted with great and improper rapidity in

putting the motion and announcing the vote thereon, so that a majoirty of the council were not given a reasonable opportunity to vote or otherwise be heard on the matter, and that he then declared that the appointment had been confirmed. Finally, the petitioner urges that the meeting was not properly adjourned.

The respondent, however, denies specifically these claims of the petitioner, and maintains that the motion to confirm his appointment was put to the council by the presiding officer in the ordinary and usual way on a voice vote without undue haste, that his appointment was properly and validly confirmed by a majority of those of the council voting, and that the adjournment of the meeting was valid.

On these disputed issues each party presented a number of witnesses, all of whom can properly be characterized as interested. The petitioner was supported by the evidence of six members of the council. The respondent offered seven witnesses to sustain his position, among whom were the mayor, the council clerk, the city treasurer, and two members of the council. A member of the council, who seconded the motion to confirm the appointment, did not testify, being out of the State at the time of the hearing. The official minutes of the council meeting of July 23, 1935, as kept by the clerk of the city council, showed that the respondent's appointment was duly confirmed, but failed to indicate that a motion had been made to that effect, although the record did show that a councilman had seconded the respondent's nomination. The omission was satisfactorily explained by the evidence of the council clerk and that of his assistant. In any event, we are convinced by a fair preponderance of the testimony that a motion to confirm the mayor's appointment of the respondent was duly made and seconded. The minutes of this meeting were "accepted as read" at a meeting of the city council held on August 15, 1935, when all six members of the council who testified herein on behalf of the petitioner were present. No question has been raised by the petitioner as to the validity of the acceptance of these minutes.

The meeting of July 23, 1935, was in session from 8:32 to 8:42 p. m., during which time several items of business were transacted, the confirmation of the respondent's appointment being the last one. At this meeting, over which the mayor presided, all nine members of the council were present, together with the council clerk and his assistant. It is agreed that approximately three hundred and fifty spectators attended the meeting, some in a balcony, and some on the floor of the chamber, but none within the railing where the members of the council, the clerk and the mayor were seated. This railing completely shut off one end of the council chamber for the use of the council and city officers. There was, also, an appreciable distance between the first row of spectators' seats and the rail, which space was kept reasonably clear during the meeting.

In general, the petitioner's witnesses testify that the noise from the audience was so great and the meeting so disorderly that soon after it was opened they could not hear the mayor or the member of the council who was putting motions, and that they were unable to tell what business was being transacted, and some of the petitioner's witnesses testified that this condition continued during the rest of the meeting. On the other hand, witnesses for the respondent testify that the audience was orderly and that there was no undue noise from it, considering the number of persons present. Certain of these witnesses call attention to one instance when a spectator in the balcony became somewhat unruly and the mayor without any request ordered him to be quiet, and say that this was the only occasion when there was any disturbance among the spectators.

The respondent's witnesses further testify that otherwise such noise and confusion as there was existed because two of the councilmen, witnesses for the petitioner, kept calling to each other, while the meeting was in progress, across the enclosure in which they were seated, insisted upon standing and talking loudly, though not recognized by the chair, and that part of the time one of these men sat on his desk and kicked his feet against it. It is contended by the respondent

that, as a result of this conduct, the mayor was obliged to ask policemen to request the members making the noise to sit down and be quiet. It is uncontradicted that a police officer carried out the mayor's order by merely asking the member in question to behave himself.

The petitioner's version of the calling in·of the police is that it occurred because one of the six members of the council, unable, as he claims, to obtain recognition, attempted to poll a majority of the council to ascertain if they desired a roll call vote on some matter, and then advanced toward the mayor to inform him concerning the poll. The fact that police were called by the mayor to quiet certain members of the council is not in any way denied. At any rate, this occurrence took place some time before the question of the confirmation of the respondent's appointment came before the council for action.

The evidence also shows that the councilmen sat at desks arranged in an approximate semicircle, facing the presiding officer's desk, which was slightly elevated. The relative positions of the member. putting the motions and those members complaining that they could not hear well and the direction in which the members and the presiding officer were facing during the proceedings, together with the tone of voice used, undoubtedly had some bearing on the issue of audibility. However, it may be noted that under the seating plan of the council, the members of that body who testified as witnesses for the respective parties, were not segregated into two separate groups, but were intermingled.

In support of his contention that the action of the city council, at the meeting of July 23, 1935, in confirming the mayor's appointment of the respondent to the office in dispute, was invalid, because such meeting was so disorderly as to be out of control, the petitioner cites *Toupin v. Marceau*, 55 R. I. 265. We are clearly of the opinion that such case is not controlling in the disposition of the cause now before us. The two cases are patently distinguishable on their facts. In the case of *Toupin* v.

*Marceau, supra,* the evidence of all witnesses revealed that great confusion existed at the meeting under discussion among the members themselves. The clerk was ejected therefrom by police at the request of the presiding officer. Roll calls were taken under unusual circumstances. Two sets of records were presented, neither one of which was accurate or complete. It was impossible to ascertain what business had been done and the clerk's record and his own testimony confirmed this. In the instant cause, however, we have on this issue merely the question, raised by sharply conflicting testimony, as to the existence and extent of noise, confusion or disorder during the meeting at the time the vote on the respondent's confirmation was taken, and whether, if it be found that any such noise, confusion or disorder was then present, it was sufficient to cause the council to lose its character as a deliberative body. We do not find, on all the evidence presented herein, that there was such disorder as would warrant us in sustaining the petitioner on that ground.

Passing to a consideration of the meeting itself, the evidence is in hopeless conflict on the issue of whether or not a majority of the council voted in the negative when the confirmation of his appointment of the respondent to the disputed office was put to a voice vote by the mayor as presiding officer, and on the issue of the number of members requesting a roll call and the time of such request. Testimony introduced on behalf of the petitioner tended to show that when the mayor put the confirmation of his appointment to a voice vote, some members of the council voted in the negative. Certain of these members testified that they were not sure upon what they were voting, but voted after watching the mayor's lips and the raising of his gavel. While on previous votes some attempt had been made by one of the majority members to himself poll at least part of the membership of the council to ascertain how they had voted on certain matters, the weight of the evidence discloses that no such attempt was made immediately following

the vote on the confirmation of the respondent's appointment. The testimony of the respondent's witnesses was that they heard no votes in the negative when the mayor called for such votes after putting the confirmation of the respondent's appointment before the council.

There is no provision of the city charter, nor rule of the council, which requires that the confirmation of an appointment by the mayor be voted upon by the council in any particular manner. The petitioner has raised no question as to the propriety of such confirmation of an appointment by the mayor on an ordinary voice vote, but contends that in the instance before us a roll call was properly requested. In this connection, we note that in the seventh paragraph of the petition herein it is alleged in substance that the mayor as presiding officer on each resolution ignored requests from more than three members of the council for a roll call vote, after it was announced by him that the resolution was adopted. If this was the fact, then clearly the request for a roll call was invalid as not being made seasonably, and we might well dismiss this ground of the petition for that reason. We have, however, considered the evidence on this point.

The petitioner's witnesses testified that a roll call was demanded by at least three members of the council, as the provisions of the city charter required, sec. 5, Warwick city charter act, *supra*, before the presiding officer announced the result of the voice vote in question. The evidence of these witnesses on this point was not entirely consistent, especially in relation to the number and identity of those members allegedly demanding the roll call. On this issue, certain of the petitioner's witnesses were somewhat indefinite and uncertain. It may be noted that one of these witnesses was himself elected without a roll call by the council at the meeting in question, as a member of a board to canvass the voting lists of the city of Warwick for a special election. To this action the same general objection was then made by the other witnesses for the petitioner as is

now raised before us to the respondent's confirmation. The evidence shows that this witness attended at least one meeting of that board, although he now takes the position that all business transacted at the meeting under discussion after the first item of business, which, incidentally, did not relate to his election or the confirmation of the respondent, was void. This conduct by him tends to lessen the weight to be given his testimony.

On the other hand, the witnesses produced by the respondent gave evidence that, when the mayor put the confirmation of his appointment to a voice vote in the ordinary manner, they heard votes in the affirmative, but none in the negative. They further testified that the mayor then announced that the "ayes" had prevailed and that the appointment was confirmed, and that up to that time no request for a roll call had been made, but that immediately following this declaration by the mayor, two members, but no more, then demanded a roll call. They identify these two members as the ones who, they allege, had been making some disturbance during the meeting, and some of the respondent's witnesses also testify that one of them attempted, by the motion of his hands, to get other members of the council to rise and demand a roll call, and that some of the members partly rose and then without speaking sat down again. It is not disputed that no roll call vote was taken. On this issue we are of the opinion that the evidence preponderates in favor of the respondent's contention that not more than two members of the council made a request for a roll call in connection with the vote on the confirmation of the respondent's appointment, and that this request was made as alleged in the petition, namely, after the result of the vote was announced.

Following the consideration by the council of the mayor's appointment of the respondent to the office in question, it is contended by the latter that the council was properly adjourned on a voice vote. The official record of the meeting substantiates this claim. The witnesses for the

petitioner, however, urge that the evidence showed that a majority of the council voted in the negative on the adjournment. They contend that they made a request for a roll call in due time but were not recognized by the chair, and that the adjournment was put through with improper haste by the presiding officer on a voice vote. One of the councilmen testified that immediately thereafter he polled five other members of the council and ascertained that they claimed to have voted in the negative on the adjournment. These six councilmen then attempted to hold a meeting at one of the desks, while the mayor was still in his seat and the clerk was still present, one of their number being named temporary chairman and another temporary clerk, and signed a statement purporting to be a resolution declaring all proceedings of the council at the meeting of July 23, 1935, following the first item of business transacted, to be null and void and of no legal effect for certain specified reasons, and then adjourned. The uncontradicted evidence proves that this gathering was not conducted as a meeting of a deliberative or legislative body. Not all the members of the council were asked to participate, and the whole proceeding was clearly irregular and without the indicia of a true council meeting. We find, therefore, that this attempted meeting was invalid, and that any action taken thereat was void and of no effect. In our judgment, the weight of the testimony, taken in connection with the official record of the meeting of July 23, 1935, shows that such meeting was properly adjourned prior to the attempted action by the six members in question.

In a proceeding of this nature to try title to a public office, the respondent having shown a *prima facie* right to the office in dispute by the production of a certificate of appointment from the proper authority, the burden of proof is then upon the petitioner to establish by a fair preponderance of the evidence that the respondent is not legally entitled to the office claimed and occupied by him, and that he should be ousted therefrom by this court, and

that the petitioner's right to the office should be recognized. 22 R. C. L. 716-718 and cases cited.

We have indicated the general scope of the evidence in this cause and the contentions of the respective parties based thereon. The testimony offered bearing on the main issues is absolutely conflicting and entirely irreconcilable. Both parties were given full opportunity to present all the relevant testimony they desired bearing upon the questions before the court, but no really disinterested witness was offered by either side to assist us. As we have pointed out, the official record of the disputed meeting, which record was later "accepted" by the council, supports the position taken by the respondent herein. We have seriously considered and weighed all the evidence presented, and after so doing find ourselves in such great uncertainty and doubt as to what actually transpired at the council meeting under discussion, and as to the manner in which such meeting was conducted, that we cannot find that the evidence preponderates in favor of the petitioner upon any of the decisive issues of fact raised by him. We are, therefore, of the opinion that he has not successfully sustained the burden of proof imposed upon him by law.

In our judgment, on the facts and the record presented for our consideration in this cause, the petitioner has failed to establish by a fair preponderance of the evidence that the respondent's appointment by the mayor of Warwick to the office of city auditor was not properly confirmed by the city council at its meeting on July 23, 1935.

We find, therefore, that the respondent is legally entitled to the office of city auditor of the city of Warwick, and that the petitioner has now no valid title in such office.

The petition is denied and dismissed.

*Edward L. Godfrey, William B. Sweeney, Ralph L. Briggs, Louis V. Jackvony,* for petitioner.

*Joseph W. Grimes, City Solicitor of Warwick, Peter W. McKiernan, Dennis J. Roberts, Jr.,* for respondent.