**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-15-0000561**
**08-SEP-2016**
**08:03 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

BRENDA J. FORD, Petitioner-Appellant, v.
BOBBY JEAN LEITHEAD-TODD, Respondent-Appellee

NO. CAAP-15-0000561

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(S.P. NO. 13-1-52K)

SEPTEMBER 8, 2016

FOLEY, PRESIDING JUDGE, FUJISE AND LEONARD, JJ.

OPINION OF THE COURT BY FOLEY, J.

Petitioner-Appellant Brenda J. Ford (**Ford**) appeals from (1) the "Findings of Fact, Conclusions of Law, and Order Granting Respondent Bobby Jean Leithead-Todd's Motion for Summary Judgment in Favor of Respondent on the Verified Petition of Brenda J. Ford for an Order in the Nature of Quo Warranto Directing the Respondent Bobby Jean Leithead-Todd to Show the Authority Under Which She Purports to Hold the Office of Director of the Department of Environmental Management for the County of Hawai'i Filed December 9, 2013" (**FOF/COL**) entered on May 26, 2015;

(2) the "Order Denying Petitioner Brenda J. Ford's Motion for Reconsideration of [the FOF/COL]", entered on July 6, 2015; and

(3) the "Final Judgment" entered on July 6, 2015 in the Circuit Court of the Third Circuit[1] (**circuit court**).

The subject of Ford's petition and the dispute on appeal is whether Leithead-Todd has "an engineering degree or a degree in a related field" to qualify her to hold the office of the Director of the Department of Environmental Management.

On appeal, Ford contends the circuit court erred in: (1) concluding that the 2010 Charter Commission rather than the voters of the County of Hawai'i had amended the Charter of the County of Hawai'i (**CCH**); (2) applying agency deference to the decisions of the Hawai'i County Council (**County Council**) and the Hawai'i County Mayor (**Mayor**) and an "abuse of discretion" standard of review; (3) deferring to the opinion of the County's counsel; (4) placing the burden of proof on Ford as the Petitioner; (5) concluding that the 2010 amendment to the CCH was ambiguous; (6) concluding that the 2010 Charter Commission granted the Mayor and County Council wide latitude to interpret the language "degree in a related field"; (7) failing to interpret the language of the 2010 amendment; and (8) denying Ford's motion for reconsideration.

## I. BACKGROUND

In 2000, the CCH was amended to include a chapter on the Department of Environmental Management. CCH Chapter 5 (2006). The CCH stated that the Director of the Department of Environmental Management "shall have had a minimum of five years' administrative experience in a related field." CCH § 6-5.3.

In 2010, the County of Hawai'i Charter Commission (**Commission**) proposed an amendment to the CCH to add a "degree requirement" to the existing qualifications for Director of the Department of Environmental Management. The Commission deliberated the amendment prior to seeking the public's approval.

---

[1] The Honorable Ronald Ibarra presided.

At a meeting on September 11, 2009, the commissioners[2] evaluated the language of the amendment:

> CHR. HAITSUKA: Is there any discussion on Mr. Tyson's[3] request to amend the Charter to reflect that the Director of the Department of Environmental Management would be required to have some type of engineering degree?
>
> MR. UNGER: I know we have had this discussion before about us micro-managing county titles and the requirements for people assuming these positions, but if ever a department screams out for a professional degree, this might very well be it. I don't know what you guys think, but I understand if we address this, we might be opening up a can of worms and have to address qualifications for the other departments as well, but I think this is unique and honestly I'm kind of in favor of it.
>
> MR. SHUMWAY: Alapaki has spoken persuasively about not putting all of these details in the Charter, but I agree with Scott on this, that especially because this is coming from the department themselves. They are asking for this, and that speaks loudly for me, and I would support it as well.
>
> CHR. HAITSUKA: Ms. Jarman.
>
> MS. JARMAN: I'm not convinced it needs to be an Engineering degree, but maybe a degree in a related field. They are basically saying you want the person to be an engineer, but I'm not convinced it needs to be an engineer, but that in a related field would make more sense to me.
>
> MR. UNGER: The current language says, ". . . administrative experience in a related field." So, are you suggesting maybe a degree in a related field as opposed to experience?
>
> MS. JARMAN: Experience and a degree, if that's what he is trying to get at. I can see somebody with some kind of environmental background that could equally do a good job, without having to be an engineer.
>
> MR. UNGER: Yes, there are all kinds of different degrees out there that could pertain to this type of situation. That makes sense as well.
>
> CHR. HAITSUKA: We could say, ". . . a degree in engineering or a related field[."] The related field would have to be related to something, so I think we have to have the word engineering in there, so it doesn't disqualify someone who has an engineering degree.
>
> MR. UNGER: So a degree in engineering or a degree in a related field?
>
> MS. JARMAN: Related to what? Related to engineering, or related to the environment? That's why I don't see why we

---

[2] Commission members mentioned here are: Ed Haitsuka, Chair; Casey Jarman, Commissioner; Susie Osborne, Commissioner; Todd Shumway, Commissioner; Scott Unger, Commissioner; and Alapaki Nahale-a, Commissioner.

[3] Lono Tyson (**Tyson**) is the former Director of the Department of Environmental Management.

would have to say engineering. If we just say a related field, it would include engineering and any other field.

MS. OSBORNE: I would concur with that.

CHR. HAITSUKA: The related field would be related to what?

MS. JARMAN: To the duties of the Department of Environmental Management.

At the January 21, 2010 Commission meeting, Tyson addressed the Commission on the proposed amendment:

CHR. HAITSUKA: Mr. Tyson, you submitted some communication to us regarding your recommendations. Is that correct?

MR. TYSON: Yes, that is correct. The testimony that I submitted was basically in opposition to the current amendment which adds an additional to the minimum of five years of administrative experience in a related field; so that the director also possesses a degree in a related field.

My original Communication 27 to the Charter Commission recommended that the director also possess an engineering degree and in the communication that I just submitted, I also added some additional information regarding the fact that prior to December, 2000, when the solid waste division and the waste water division were a part of the department of public works, the director for that department was required to be a registered engineer and additionally, the Charter also requires that the department of water supply, that department head, be a registered engineer as well. So I just wanted to take into consideration politics and negotiation that there be further consideration of the importance that the director of this department have some engineering experience: henceforth, my recommendation that the amendment be modified to include an engineering degree or a degree in a related field.

CHR. HAITSUKA: Are there any questions for Mr. Tyson?

MRS. KAWAUCHI: I have a question. I'm not sure what a related field would be in this area: what would a related field be, other than engineering?

MR. TYSON: The Department of Environmental Management is responsible for the over sight [sic] of the county's solid waste and waste water divisions, and the recycling programs including the abandon[ed] vehicle disposal program. So, a related field could be anything ranging from environmental science to even geology to a certain extent. But, a technical background that supports a lot of the very difficult decisions that the director has to make.

Although we do have division heads for waste water and solid waste who are registered engineers, decisions are made not strictly based upon their recommendations; although their recommendations are highly put into that equation. It's important for the director to also have an understanding in regards to the other potential ramifications beyond the technical issues. But having an understanding of those technical issues is critical to making the correct decision.

CHR. HAITSUKA: Are there any further questions for Mr. Tyson? Thank you, Mr. Tyson.

The electorate approved the amendment, and on November 2, 2010, CCH § 6-10.3 was amended to read:

**Section 6-10.3.   Director.**

The director of environmental management shall be appointed by the mayor, confirmed by the council, and may be removed by the mayor.  The director shall have had a minimum of five years of administrative experience in a related field and an engineering degree or a degree in a related field.

On July 10, 2013, the County Council voted to approve the appointment of Respondent-Appellee Bobby Jean Leithead-Todd (**Leithead-Todd**) as the Director of the Department of Environmental Management.

On December 9, 2013, Ford filed a quo warranto petition[4] challenging Leithead-Todd's qualifications for office. On December 18, 2013, the circuit court issued an "Order in the Nature of Quo Warranto," ordering Leithead-Todd to answer the petition in writing and state the authority under which she claimed to act as the Director of the Department of Environmental Management.  Leithead-Todd answered the petition on June 13, 2014, stating that she "possessed a Bachelors of Arts degree with a major in English literature (and minor in Hawaiian studies), and a Juris Doctor degree."  Regarding her administrative qualifications, Leithead-Todd answered that she "had once served as the Director of the Department of Environmental Management for the County of Hawaii . . . [and] had served as Legislative Auditor for the County of Hawaii from 1996 to 2003."

On January 27, 2015, both Ford and Leithead-Todd filed motions for summary judgment.  The circuit court held a hearing on these motions on February 23, 2015.  On May 26, 2015, the circuit court entered its FOF/COL granting summary judgment in favor of Leithead-Todd because Ford "did not meet [her] burden of proof, by a preponderance of the evidence, that the Mayor and Council abused their discretion [in] interpreting the "related field" language in Article VI, Section 6-10.3 of the [CCH]."

---

[4] Hawaii Revised Statutes (**HRS**) chapter 659 governs "Quo Warranto" actions.  "A petition for a writ of quo warranto seeks a court order directing a person who claims or usurps a state office to show by what authority he or she claims the office." Application of Ferguson, 74 Haw. 394, 399, 846 P.2d 894, 897 (1993).

The circuit court entered its "Final Judgment" on July 6, 2015. Ford filed her notice of appeal on August 4, 2015.

## II.   STANDARD OF REVIEW

### A.   Summary Judgment

Appellate courts review a grant or denial of summary judgment de novo. Cty. of Kaua'i ex rel. Nakazawa v. Baptiste, 115 Hawai'i 15, 25, 165 P.3d 916, 926 (2007) (citing Yamagata v. State Farm Mut. Auto. Ins. Co., 107 Hawai'i 227, 229, 112 P.3d 713, 715 (2005)).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, [an appellate court] must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Baptiste, 115 Hawai'i at 25, 165 P.3d at 926 (brackets omitted) (quoting Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005)).

### B.   Interpretation of a Charter

"[T]he interpretation of a charter is similar to the interpretation of a statute." Save Diamond Head Waters LLC v. Hans Hedemann Surf, Inc., 121 Hawai'i 16, 25, 211 P.3d 74, 83 (2009) (brackets omitted) (quoting Maui Cty. Council v. Thompson, 84 Hawai'i 105, 106, 929 P.2d 1355, 1356 (1996)). An appellate court "reviews the interpretation of a statute de novo." Save Diamond Head, 121 Hawai'i at 25, 211 P.3d at 83 (citing Hawai'i Org. of Police Officers v. Soc'y of Prof. Journalists-Univ. of Hawai'i Chapter, 83 Hawai'i 378, 402, 927 P.2d 386, 410 (1996)).

## III.   DISCUSSION

### A.   Standard of Review, Burden of Proof, Administrative Deference, and the Political Question Doctrine

Ford contends the circuit court identified the wrong burden of proof and applied the wrong standard of review when it stated:

> 30.   The Court concludes [Leithead-Todd's] answer filed on June 13, 2014, to be sufficient; thereby shifting

the burden of proof back to [Ford]. [HRS § 659-6 (1993);
Application of Ferguson].

. . . .

41. The burden is on the Petitioner to prove the
allegations in the petition by a preponderance of evidence.
Lymer v. Kumalae, 29 Hawai'i 392, 399 (1926). See also:
McGroarty v. Ferretti, 56 R.I. 152, 152, 184 A. 508, 508
(1936). This includes proving, by a preponderance of the
evidence, what degrees are in a related field.

42. Discretionary decisions of a governmental body
are reviewed for abuse of discretion. "An appellant seeking
to overturn an agency's determination made within the
agency's sphere of expertise has a high burden to
demonstrate that the agency abused its discretion. A "high
burden," a "heavy burden," and "deference" are all ways of
expressing this same concept: that a determination made by
an administrative agency acting within the boundaries of its
delegated authority will not be overturned unless
"arbitrary, or capricious, or characterized by . . . a
clearly unwarranted exercise of discretion." Paul's Elec.
Serv. v. Befitel, 104 Hawai'i 412, 419, 91 P.3d 494, 501
(2004) See Also: "discretionary decisions of a governmental
body will not be reversed absent a showing that the decision
was arbitrary, capricious, an abuse of discretion or
otherwise not in accordance with the law." Brown v. State,
172 Ind. App. 31, 34, 359 N.E.2d 608, 610 (1977).

43. Petitioner presented no evidence that the
Council and Mayor abused their discretion nominating and
confirming [Leithead-Todd] as Director of the Department of
Environmental Management as defined by Article VI, Section
6-10.3.

. . . .

46. [Ford] did not meet [her] burden of proof, by a
preponderance of the evidence, that the Mayor and Council
abused their discretion interpreting the "related field"
language in Article VI, Section 6-10.3 of the [CCH].

1.    **Applicable Burden of Proof**

Once a writ for quo warranto has been issued, the
burden of proof rests upon the respondent. Ferguson, 74 Haw. at
399, 846 P.2d at 897. It is not Ford's burden, as the quo
warranto petitioner, to prove that Leithead-Todd is not qualified
for the office she holds, or to prove that the County Council and
Mayor abused their discretion in interpreting the CCH. Instead,
it is Leithead-Todd's burden to prove that she is qualified for
the office she holds. See Okuda v. Ching, 71 Haw. 140, 144, 785
P.2d 943, 946 (1990) (holding that the respondent-appellee, a
deputy prosecutor, had established the validity of his
appointment and right to serve for the prosecution). The circuit

court erred in allocating the burden of proof to Ford instead of Leithead-Todd.

### 2. Standard of Review

The circuit court applied the abuse of discretion standard of review because it viewed the Mayor's and County Council's decision as agency decisions. The circuit court cited Befitel for the proposition that an agency's exercise of discretion is to be afforded deference. See Befitel, 104 Hawai'i at 417, 91 P.3d at 499 ("HRS § 91-14(g)(6) [(2012 Repl.)] provides that an agency's exercise of discretion will not be disturbed unless 'arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'" (brackets omitted)).

Under HRS § 91-1 (2012 Repl.), an "agency" is a "state or county board, commission, department, or officer authorized by law to make rules or to adjudicate contested cases, except those in the legislative or judicial branches." The County Council is clearly excepted from the definition of "agency" because it is a legislative body. See Sandy Beach Defense Fund v. City Council of City & Cty. of Honolulu, 70 Haw. 361, 368-69, 773 P.2d 250, 255-56 (1989) "Section 91-1 clearly excludes the legislative branch from the definition of 'agency' and therefore, from compliance with the procedural requirements contained in Chapter 91." Id. at 369, 773 P.2d at 256. The Mayor of Hawai'i County similarly falls outside of the scope of an "agency" because the Mayor was not involved in rule-making when appointing Leithead-Todd to her position as Director of the Department of Environmental Management. See Gibb v. Spiker, 68 Haw. 432, 435-36, 718 P.2d 1076, 1078-79 (1986) (holding that a police chief was not an "agency" under HRS § 91-1 because the police chief was not promulgating or enforcing any rules in his decision not to rehire a former police officer).

The Mayor and the County Council are not entitled to deference as political bodies or as agencies in their appointment of Leithead-Todd in this quo warranto action. In a quo warranto action, the circuit court is not acting as an appellate court, like it would in an appeal from an agency decision under HRS

§ 91-14(a) (2012 Repl.),[5] but instead reviews whether a person who claims office has the authority to do so. The circuit court erred in requiring Ford to prove that the Mayor and the County Council abused their discretion in appointing Leithead-Todd.

### 3. Political Question Doctrine

In support of the circuit court's decision to defer to the decisions of the Mayor and County Council, Leithead-Todd makes a cursory argument that this court should abstain from interfering with political questions, which we address in depth.

In Trustees of the Office of Hawaiian Affairs v. Yamasaki, 69 Haw. 154, 737 P.2d 446 (1987), the Hawai'i Supreme Court adopted the test established by the United States Supreme Court in Baker v. Carr, 369 U.S. 186 (1962):

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due [to] coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.
>
> Unless one of these formulations is inextricable from the case at bar, there should be no dismissal for nonjusticiability on the ground of a political question's presence.

Yamasaki, 69 Haw. at 170, 737 P.2d at 455 (quoting Baker, 369 U.S. at 217). The Hawai'i Supreme Court has clarified that under the state political question doctrine, "it can be said that a court is to interpret constitutional questions as long as there do not exist uncertainties surrounding the subject matter that have been clearly committed to another branch of government to resolve." Nelson v. Hawaiian Homes Comm'n, 127 Hawai'i 185, 197, 277 P.3d 279, 291 (2012).

In Nelson, the Hawai'i Supreme Court addressed whether

---

[5] HRS § 91-14(a) provides, "Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.]"

> the political question doctrine bar[s] Hawaiian Homes Commission Act (HHCA) beneficiaries from using Haw. Const. Article XII, Section 1's "sufficient sums" provision to demand more legislative funding of the Department of Hawaiian Home [L]ands [(DHHL)], when that provision provides no guidance at all as to how quickly homesteads must be developed?

Nelson, 127 Hawai'i at 187, 277 P.3d at 281. Article XII, section 1 of the Hawai'i Constitution provides:

> The legislature shall make sufficient sums available for the following purposes: (1) development of home, agriculture, farm and ranch lots; (2) home, agriculture, aquaculture, farm and ranch loans; (3) rehabilitation projects to include, but not limited to, educational, economic, political, social and cultural processes by which the general welfare and conditions of native Hawaiians are thereby improved; (4) the administration and operating budget of the department of Hawaiian home lands; in furtherance of (1), (2), (3) and (4) herein, by appropriating the same in the manner provided by law.

Nelson, 127 Hawai'i at 187, 277 P.3d at 281 (emphasis omitted). The Hawai'i Supreme Court held that the 1978 constitutional convention history provided judicially discoverable and manageable standards and made initial policy determinations as to what constituted "sufficient sums" for DHHL's administration and operation budget, the fourth purpose identified in article XII, section 1 of the Hawai'i Constitution. Id. at 197-203, 277 P.3d at 291-97 (holding that the convention history showed that "the $1.3 to $1.6 [million] figure represented 'sufficient sums' for administrative and operating expenses only"). The other three purposes, however, were deemed nonjusticiable political questions in light of the lack of clarity as to what would constitute "sufficient sums" for these purposes. Id. at 203-06, 277 P.3d at 297-300.

### a. Textually Demonstrable Constitutional Commitment of the Issue to a Coordinate Political Department

CCH § 6-10.3 does not constitute a textually demonstrable commitment to either the Mayor or County Council. The language of CCH § 6-10.3 prior to the 2010 amendment arguably committed the evaluation of the qualifications of the Director to the Mayor and County Council. If the question of the Director's degree was nonjusticiable, then the 2010 CCH amendment, requiring the Director of the Department of Environmental Management to have "an engineering degree or a degree in a related field,"

would be devoid of any real substance or effect.  The Mayor and County Council would have unreviewable discretion in determining the qualifications of the Director, contrary to the stated intent of the 2010 CCH amendment.  We cannot ascribe to the charter "framers the intent to enact laws devoid of any real substance and effect[.]"  In re Water Use Permit Applications, 94 Hawaiʻi 97, 142, 9 P.3d 409, 454 (2000).  "A constitutional provision must be construed to avoid an absurd result and to recognize the mischief the framers intended to remedy."  United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Yogi, 101 Hawaiʻi 46, 53, 62 P.3d 189, 196 (2002) (citation and internal quotation marks omitted).

Therefore, we cannot conclude that the evaluation of the qualifications of the Director of Environmental Management has been textually committed to a coordinate political department.[6]

### b.    Lack of Judicially Discoverable and Manageable Standards

The testimony at the Commission meetings reveal that the commissioners understood the amended language to require that the Director have a degree in engineering or a degree in a field related to the duties of the Department of Environmental Management.  Additionally, Tyson, the then-Director of the Department of Environmental Management and proponent of the amendment, stated his preference for a Director with a background in engineering but agreed that any degree in a technical field

---

[6] See e.g., State ex rel. Swanson v. Maier, 999 N.E.2d 639, 643 (Ohio 2013) (holding that although the county sheriff was a political appointment, the qualifications for sheriff were set by the General Assembly and "the courts may be called upon in a quo warranto action such as this one to make a determination whether an appointee meets those qualifications"); State ex rel. James v. Reed, 364 So.2d 303, 308 (Ala. 1978) (holding that a quo warranto action regarding a state representative who was convicted of a crime rendering him ineligible for office under the Alabama Constitution was not a political question).  "We are clear that this section [prohibiting a person convicted of certain crimes from eligibility for public office] is a specific constitutional limitation on legislative authority, and judicial enforcement of its mandate does not derogate the principle of separation of powers."  Id. at 306; cf. In re Jones, 476 A.2d 1287, 1290-93 (Pa. 1984) (holding that judicial inquiry into the qualifications of a prospective legislator running for office violates separation of powers, but that a quo warranto action is available to test an elected legislator's right to hold public office); State ex rel. Turner v. Scott, 269 N.W.2d 828, 832 (Iowa 1978) (holding that where the Iowa Constitution provides that each house of the Iowa Legislature judges the qualification of its members, a quo warranto action to remove a state senator from office was a political question).

related to the duties of the Department of Environmental Management would prepare the Director for her or his duties. Just as the constitutional convention history revealed the meaning of "sufficient sums" for DDHL's administrative and operating expenses in Nelson, the history of the charter amendment here provides judicially manageable standards by which a court may judge "degree in a related field." It is within a court's ability to judge whether a specific degree is related to the duties of the Department of Environmental Management. See Nelson, 127 Hawai'i at 197-203, 277 P.3d at 291-97; see e.g., State ex rel. Oregon Consumer League v. Zielinksi, 654 P.2d 1161, 1163 (Or. 1982) (holding that the standards set out in statute were "sufficiently definite to permit judicial inquiry into the validity of defendant's appointment as one of the two consumer representatives on the State Board of Agriculture").

c.   **Initial Policy Determination of a Kind Clearly for Nonjudicial Discretion**

As discussed above, it was the Commission members who made the initial policy determination that "related field" meant related to the duties of the Department of Environmental Management, and therefore, it is not left to the judiciary to make this policy determination. Like the constitutional convention history in Nelson, the testimony at the Commission meetings provided sufficient guidance for the judiciary, so that a court may avoid making a policy determination about whether the Director's degree should be related to the duties of the Department of Environmental Management. See Nelson, 127 Hawai'i at 197-203, 277 P.3d at 291-97.

d.   **Lack of Respect Due to Coordinate Branches of Government**

There is no lack of respect to the Mayor or County Council in a court's determination of whether Leithead-Todd's law degree is a degree related to the duties of the Department of Environmental Management. "[T]he courts, not the legislature, are the ultimate interpreters of the Constitution[,]" or in this case, the CCH. Alakai Na Keiki, Inc. v. Matayoshi, 127 Hawai'i 263, 276, 277 P.3d 988, 1001 (2012).

e.    **Unusual Need for Unquestioning Adherence to a Political Decision Already Made**

This case does not present an unusual need for unquestioning adherence to a political decision already made. The need is for adherence to the language and intent of the 2010 CCH amendment. Beyond the interpretation of the language of the charter, the decision to appoint and confirm a Director is a political decision for the Mayor and County Council.

f.    **Potential Embarrassment from Multifarious Pronouncements by Various Departments on One Question**

There is no potential for embarrassment from multifarious pronouncements by various departments on one question. All that is required of the circuit court is to determine whether Leithead-Todd's law degree is related to the duties of the Department of Environmental Management.

Because none of the six factors set forth in Yamasaki are present in this case, the question of whether a degree is related to the duties of the Department of Environmental Management is not a political question.

B.    **Resolution of the Petition**

Ford challenges the circuit court's resolution of the ambiguity in CCH § 6-10.3. During proceedings at the circuit court and on appeal, the parties agree that the provision "an engineering degree or a degree in a related field" is ambiguous. Ford's position is that the language of the CCH requires the Director of the Department of Environmental Management to have a degree in engineering or a degree in a field related to engineering. According to Leithead-Todd, however, the CCH requires the Director to have a degree in engineering or a degree in a field related to the duties and authority of the Department of Environmental Management.

As discussed above, it is clear that the Commission intended to require the Director of the Department of Environmental Management to hold a degree in engineering or a degree in a field related to the duties of the Department of Environmental Management. Leithead-Todd has the burden of

proving that she is qualified for the office she holds. Because the circuit court applied the wrong standard of proof to this quo warranto action, we remand this case to the circuit court to evaluate whether Leitead-Todd's law degree is a degree related to the duties of the Department of Environmental Management.

## IV. CONCLUSION

Therefore,

(1) the "Findings of Fact, Conclusions of Law, and Order Granting Respondent Bobby Jean Leithead-Todd's Motion for Summary Judgment in Favor of Respondent on the Verified Petition of Brenda J. Ford for an Order in the Nature of Quo Warranto Directing the Respondent Bobby Jean Leithead-Todd to Show the Authority Under Which She Purports to Hold the Office of Director of the Department of Environmental Management for the County of Hawai'i Filed December 9, 2013" entered on May 26, 2015;

(2) the "Order Denying Petitioner Brenda J. Ford's Motion for Reconsideration of Findings of Fact, Conclusions of Law and Order Granting Respondent Bobby Jean Leithead-Todd's Motion for Summary Judgment in Favor of Respondent on the Verified Petition of Brenda J. Ford for an Order in the Nature of Quo Warranto Directing the Respondent Bobby Jean Leithead-Todd to Show the Authority Under Which She Purports to Hold the Office of Director of the Department of Environmental Management for the County of Hawai'i Filed December 9, 2013, Filed May 26, 2015" entered on July 6, 2015; and

(3) the "Final Judgment" entered on July 6, 2015 in the Circuit Court of the Third Circuit are vacated and this case is remanded for proceedings consistent with this Opinion.

On the briefs:

Michael J. Matsukawa
for Petitioner-Appellant.

Laureen L. Martin
Deputy Corporation Counsel Section Chief,
Office of the Corporation Counsel,
County of Hawai'i
for Respondent-Appellee.