**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0002225
23-APR-2014
09:32 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---


RAMONA HUSSEY, M. KA'IMILA NICHOLSON,
NATALIA ANTONIA HUSSEY-BURDICK, BRENT S. DUPUIS,
MARVIN D. HESKETT, and JOEL L. MERCHANT,
Petitioners-Appellants,
v.
CALVIN K.Y. SAY,
Respondent-Appellee


NO. CAAP-13-0002225


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(SPECIAL PROCEEDING NO. 12-1-0736)


APRIL 23, 2014


NAKAMURA, C.J., FOLEY AND LEONARD, JJ.


OPINION OF THE COURT BY FOLEY, J.

Petitioners-Appellants Ramona Hussey, M. Ka'imila
Nicholson, Natalia Antonia Hussey-Burdick, Brent S. Dupuis,
Marvin D. Heskett, and Joel L. Merchant (**Petitioners**) appeal
from: (1) the March 11, 2013 "Order Granting Respondent Calvin
K.Y. Say's Motion to Dismiss Petition for Writ of Quo Warranto"
(**Order Granting Motion to Dismiss Petition**); (2) the February 20,
2013 Denied "Petition for Writ of Quo Warranto;" and (3) the July
5, 2013 Final Judgment, all entered in the Circuit Court of the

First Circuit[1] (**circuit court**).

Petitioners contend the circuit court erred by:

(1) finding it lacked subject matter jurisdiction to hear quo warranto actions challenging an individual's possession of title to office of representative when allegations have been averred that the individual is no longer a qualified voter of the representative district pursuant to article III, section 6 of the Hawai'i Constitution (rev. 1978);[2] and

(2) finding a quo warranto action challenging an individual's possession of title to elected office when allegations have been averred that the individual is no longer a qualified voter of the representative district pursuant to article III, section 6 of the Hawai'i Constitution, was a voter registration challenge pursuant to Hawaii Revised Statutes (**HRS**) § 11-25 (2009 Repl.).[3]

---

[1]     The Honorable Karen T. Nakasone presided.

[2]     Article III, section 6 of the Hawai'i Constitution provides:

Section 6.   No person shall be eligible to serve as a member of the senate unless the person has been a resident of the State for not less than three years, has attained the age of majority and is, prior to filing nomination papers and thereafter continues to be, a qualified voter of the senatorial district from which the person seeks to be elected; except that in the year of the first general election following reapportionment, but prior to the primary election, an incumbent senator may move to a new district without being disqualified from completing the remainder of the incumbent senator's term. No person shall be eligible to serve as a member of the house of representatives unless the person has been a resident of the State for not less than three years, has attained the age of majority and is, prior to filing nomination papers and thereafter continues to be, a qualified voter of the representative district from which the person seeks to be elected; except that in the year of the first general election following reapportionment, but prior to the primary election, an incumbent representative may move to a new district without being disqualified from completing the remainder of the incumbent representative's term.

[3]     HRS § 11-25 provides:

§11-25  Challenge by voters; grounds; procedure.  (a) Challenging prior to election day. Any registered voter may challenge the right of a person to be or to remain registered as a voter in any precinct for any cause not previously decided by the board of registration or the supreme court in respect to the same person; provided that

(continued...)

2

## I. BACKGROUND

On December 31, 2012, Petitioners filed their Petition for Writ of Quo Warranto (**Petition**) with the circuit court pursuant to HRS § 659-4 (1993).[4] Petitioners alleged Respondent-Appellee Calvin K.Y. Say (**Say**), a member of the House of Representatives from the Twentieth Representative District, "has lived and continues to live at 2247 Star Road in Pauoa Valley in the Twenty Fifth Representative District and the house at 2247

---

[3](...continued)
in an election of members of the board of trustees of the office of Hawaiian affairs the voter making the challenge must be registered to vote in that election. The challenge shall be in writing, setting forth the grounds upon which it is based, and be signed by the person making the challenge. The challenge shall be delivered to the clerk who shall forthwith serve notice thereof on the person challenged. The clerk shall, as soon as possible, investigate and rule on the challenge.

(b) Challenging on election day. Any voter rightfully in the polling place may challenge the right to vote of any person who comes to the precinct officials for voting purposes. The challenge shall be on the grounds that the voter is not the person the voter alleges to be, or that the voter is not entitled to vote in that precinct; provided that only in an election of members of the board of trustees of the office of Hawaiian affairs, a person registered to vote in that election may also challenge on the grounds that the voter is not Hawaiian. No other or further challenge shall be allowed. Any person thus challenged shall first be given the opportunity to make the relevant correction pursuant to section 11-21. The challenge shall be considered and decided immediately by the precinct officials and the ruling shall be announced.

(c) If neither the challenger nor the challenged voter shall appeal the ruling of the clerk or the precinct officials, then the voter shall either be allowed to vote or be prevented from voting in accordance with the ruling. If an appeal is taken to the board of registration, the challenged voter shall be allowed to vote; provided that ballot is placed in a sealed envelope to be later counted or rejected in accordance with the ruling on appeal. The chief election officer shall adopt rules in accordance with chapter 91 to safeguard the secrecy of the challenged voter's ballot.

[4] "A petition for a writ of quo warranto seeks a court order directing a person who claims or usurps a state office to show by what authority he or she claims the office. The burden [of proof] rests with the respondent once the writ is issued." Application of Ferguson, 74 Haw. 394, 399, 846 P.2d 894, 897 (1993) (citation and emphasis omitted). Private individuals obtain a writ of quo warranto by filing a sworn petition with a circuit court "setting out facts sufficient to show a right to the order[.]" HRS § 659-4. The Respondent must file her or his answer in writing, within a time determined by the circuit court, and stating the authority under which the person claims to act. HRS § 659-5 (1993).

Star Road is where his habitation is fixed;" and that "[Say] is registered to vote and claims legal residency at 1822 10th Avenue in Palolo Valley [(**Palolo residence**)] but previously admitted he does not actually live there . . . ." Petitioners sought a writ of quo warranto requiring Say "to appear before this Honorable [circuit c]ourt at a time certain and as soon as possible and answer unto petitioners and show by what warrant and authority he claims title."

In 2006, Say prevailed in two challenges to his voter registration, partly on the basis of his contention that his absence from his Palolo residence was "due to extraordinary circumstances relating to the provision of health and living assistance for a member of his family." Another unsuccessful challenge to Say's voter registration occurred in 2010.

On January 8, 2013, Say filed his Motion to Dismiss Petition for Writ of Quo Warranto (**Say's Motion to Dismiss**). On February 12, 2013, Petitioners filed a Memorandum in Opposition to Say's Motion to Dismiss. On February 15, 2013, Say filed a reply to the Memorandum in Opposition.

The circuit court held a hearing on Say's Motion to Dismiss on February 20, 2013. Petitioners argued that the question of an officer-holder's residency should be submitted to an evidentiary trial as occurred in Dejetley v. Kahoʻohalahala, 122 Hawaiʻi 251, 226 P.3d 421 (2010). The circuit court ruled at the hearing: "It is [the circuit court's] determination as a question of law that this [(the petition's challenge to Say's voter registration)] is exclusively within the province of the city clerk, and HRS Section 11-25 would govern these types of questions and this type of issue, not the jurisdiction of [the circuit court.]"

On March 11, 2013, the circuit court entered its Order Granting Motion to Dismiss Petition pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 12(b)(1), which states:

> 1. The [Petition] is, on its face, a challenge to [Say's] voter registration. Challenges to voter registration are exclusively within the province of the clerks of the respective counties pursuant to [HRS] §11-25.
>
> 2. The circuit courts can never have jurisdiction

over challenges to voter registration. A person ruled against by the county clerk may appeal to the board of registration pursuant to [HRS] §11-26 [2009 Repl.], and an appeal from a board of registration decision must be made to the intermediate appellate court pursuant to [HRS] §11-51 [2009 Repl.].

> 3. [Say's Motion to Dismiss] is GRANTED pursuant to [HRCP Rule] 12(b)(1). The dismissal shall be without prejudice as to Petitioners' ability to bring a challenge in the proper forum, which the [circuit court] finds is the Office of the City Clerk, City and County of Honolulu.

> 4. [Say's] request for attorneys' fees is DENIED without prejudice as to [Say's] ability to seek such fees in the proper forum.

On March 21, 2013, Petitioners filed a notice of appeal to this court, which was dismissed on July 2, 2013 for lack of appellate jurisdiction because the circuit court's order had not been reduced to a separate final judgment.

On July 5, 2013, the circuit court filed its Final Judgment in favor of Say. Petitioners then filed a notice of appeal on July 23, 2013.

## II. DISCUSSION

Petitioners sought a writ of quo warranto "requir[ing] that [Say] come forward with his burden and show by what authority he holds title to office." The circuit court found however, that it lacked jurisdiction because the Petition was "on its face, a challenge to [Say's] voter registration." Petitioners contend the circuit court erred.

A circuit court's grant or denial of a motion to dismiss under HRCP Rule 12(b)(1) for "lack of subject matter jurisdiction is a question of law, reviewable de novo." Norris v. Hawaiian Airlines, Inc., 74 Haw. 235, 239, 842 P.2d 634, 637 (1992), aff'd, Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246 (1994). In Norris, the Hawai'i Supreme Court adopted the view of the Ninth Circuit Court of Appeals in Love v. United States, 871 F.2d 1488, 1491 (9th Cir. 1989), opinion amended on other grounds and superseded by Love v. United States, 915 F.2d 1242 (9th Cir. 1989):

> review of a motion to dismiss for lack of subject matter jurisdiction is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff. Dismissal is improper unless it appears beyond doubt that the plaintiff

> can prove no set of facts in support of his claim which
> would entitle him to relief.

Norris, 74 Haw. at 240, 842 P.2d at 637 (internal quotation marks, citation, and brackets omitted.)

The Petition addressed Say's eligibility to serve as a member of the House of Representatives under article III, section 6 of the Hawai'i Constitution. Article III, section 6 of the Hawai'i Constitution provides, in part, eligibility requirements for those seeking to serve as house representatives:

> Section 6 . . . No person shall be eligible to serve as a
> member of the house of representatives unless the
> person . . . is, prior to filing nomination papers and
> thereafter continues to be, a qualified voter of the
> representative district from which the person seeks to be
> elected; except that in the year of the first general
> election following reapportionment, but prior to the primary
> election, an incumbent representative may move to a new
> district without being disqualified from completing the
> remainder of the incumbent representative's term.

Our courts have jurisdiction over the interpretation of constitutional provisions for the qualification of candidates for the house of representatives and of elected representatives to serve in that capacity. See Alakai Na Keiki, Inc. v. Matayoshi, 127 Hawai'i 263, 276, 277 P.3d 988, 1001 (2012), reconsideration denied, 127 Hawai'i 233, 277 P.3d 327 (2012) ("Our ultimate authority is the Constitution; and the courts, not the legislature, are the ultimate interpreters of the Constitution.") quoting State v. Nakata, 76 Hawai'i 360, 370, 878 P.2d 699, 709 (1994); and Cnty. of Hawai'i v. Ala Loop Homeowners, 123 Hawai'i 391, 454, 235 P.3d 1103, 1166 (2010) ("The ultimate authority for interpreting Hawai'i's constitutional guarantees is vested in the courts of this state."); Akizaki v. Fong, 51 Haw. 354, 357, 461 P.2d 221, 223 (1969) ("[C]ourts are required by the [Hawai'i] Constitution to be the forum and the final arbiter in such disputes [over election contests involving a legislative seat].").

Article III, section 1 of the Hawai'i Constitution vests the legislature with "the power to enact laws and to declare what the law shall be." Sherman v. Sawyer, 63 Haw. 55, 57, 621 P.2d 346, 348 (1980). "Under this grant of authority,

the legislature has the power to establish the subject matter jurisdiction of our state court system." Id. Jurisdiction established by legislative enactment, however, may not encroach on judicial power vested in the courts by the constitution. See AlohaCare v. Dep't of Human Servs., 127 Hawai'i 76, 88, 276 P.3d 645, 657 (2012), as corrected (May 18, 2012), reconsideration denied, 127 Hawai'i 233, 277 P.3d 327 (2012).

Petitioners did not "challenge" Say's voter registration under HRS chapter 11, but rather his qualification to remain seated as a house representative under the Hawai'i Constitution. A person is a "voter" if she or he is "duly registered to vote." See HRS § 11-1 (2009 Repl.). "No person shall register or vote in any other precinct than that in which the person resides except as provided in [HRS] section 11-21." HRS § 11-12(a) (2009 Repl.). "An applicant shall not be registered to vote unless the applicant's voter registration form contains all of the information listed in [Hawaii Administrative Rules (**HAR**)] section 3-172-20(a)." HAR § 3-172-24(a) (am. 2010).[5] "Prior to election day, any registered voter may

---

[5]     HAR § 3-172-20(a) provides:

§3-172-20 Voter registration form. (a) The affidavit on the application for voter registration form shall be in a form prescribed and approved by the chief election officer containing substantially the following information:

(1)     A place for the applicant's name, social security number, date of birth, residence address or a description of the location of the residence, and mailing address;

(2)     A statement that the residence stated in the voter registration form is not simply because of the applicant's presence in Hawaii, but that the residence was acquired with the intent to make Hawaii the applicant's legal residence with all the accompanying obligations therein;

(3)     A statement that the applicant is a U.S. citizen;

(4)     A statement that the applicant is at least sixteen years of

(continued...)

challenge the right of a person to be or to remain registered as a voter in any precinct."  HAR § 3-172-40(a).  Challenges to a voter's registration prior to an election are investigated and ruled upon by the clerk of the county in which an election is held.  HRS § 11-25(a).  A Board of Registration (**County Board**) in each of the four counties hears appeals from the county clerk's ruling.  See HRS § 11-41 (2009 Repl.).

The legislative history of HRS chapter 11 shows that the legislature did not intend to vest powers in the county clerk and County Boards that would conflict with constitutional provisions governing the eligibility of persons to serve as members of the legislature.  HRS chapter 11 was enacted in 1970 as part of Act 26.  1970 Haw. Sess. Laws Act 26, § 2 at 17-71.  "Due to the initiation of new voting systems, new parties, a rapidly increasing and mobile population, and actions of the 1968 Constitutional Convention," the legislature passed Act 26 to "thorough[ly] revis[e]" State and county election laws.  1970 Haw. Sess. Laws Act 26, § 1 at 17.  The committee report stated that provisions included in Act 26 were intended to clarify residency, make voter registration "easier," and "assist[]" the county clerk in "keeping registration up to date."  H. Stand. Comm. Rep. No. 589, in 1969 House Journal at 852.  Specifically,

---

[5](...continued)

        age at the time of completing the registration form;

(5)    A self-subscribing oath that the applicant is swearing or affirming to the truth of the information given in the affidavit;

(6)    A space for the signature of a witness when the applicant is unable to write for reason of illiteracy, blindness, or other physical disability; and

(7)    A statement which says that the office, site, or location at which an applicant registers to vote, or the declination on the part of the applicant to register to vote will remain confidential and will be used for voter registration purposes only.

added provisions would allow the county clerk "to gather information on the residency status of voters' names and addresses from public and private sources." Id. The committee report noted, "[b]ecause of a large population and high voter mobility, voter lists, especially that for [O'ahu], are becoming increasingly difficult to maintain accurately. This provision will aid the clerk of Honolulu and the clerks of the neighbor islands, as their populations increase, to continually update their lists." Id. Act 26 amended the Hawaii Revised Statutes by adding chapter 11, which includes HRS §§ 11-23 and 11-25. 1970 Haw. Sess. Laws Act 26, § 2 at 24-25. Under HRS §§ 11-23(a) and 11-25(a), the county clerk is empowered to investigate challenges to a voter's registration. The legislative history of HRS chapter 11 shows the legislature empowered the county clerk to "investigate" and rule upon voter registrations under HRS § 11-25 to "assist" the county clerk in keeping voter registrations up to date. H. Stand. Comm. Rep. No. 589, in 1969 House Journal at 852.

Hawai'i courts have delineated the jurisdictional boundary between the courts, the county clerk, and County Boards' respective authorities to decide whether a person's residency status makes her or him eligible for elected office or "to be or to remain registered" as a voter. In Dupree v. Hiraga, 121 Hawai'i 297, 219 P.3d 1084 (2009), a County Board did not exceed its jurisdiction when it ruled on candidate Solomon Kaho'ohalahala's registration as a voter in Lāna'i county for Maui County Council election purposes. See id. at 316, 219 P.3d at 1103. The Dupree court specified the County Board did not exceed its jurisdiction under HRS chapter 11 because it ruled "only on Kaho'ohalahala's right to be or remain a registered voter" under HRS § 11-25(a), and "did not mention any possible consequences for Kaho'ohalahala's candidacy under the provisions applicable to a candidate whose nomination papers have been successfully

challenged" under HRS § 12-8 (2009 Repl.).[6]  Dupree, 121 Hawai'i
at 316, 219 P.3d at 1103 (emphasis added).  Likewise, the
Dejetley court distinguished the factual determination of whether
Kaho'ohalahala was a resident "for purposes of his public office
residency requirement" from a County Board's determination that
Kaho'ohalahala was not a resident "for purposes of voter
registration."  Dejetley, 122 Hawai'i at 267 n.36, 226 P.3d at
437 n.36.

Circuit courts have jurisdiction over "actions or
proceedings in or in the nature of . . . quo warranto[.]"
HRS § 603-21.7(b) (1993).  A writ of quo warranto inquires into
the authority by which a State official claims her or his office.
HRS § 659-1 (1993).  The Dejetley court concluded that a writ of
quo warranto "seemed to be an appropriate remedy" for
Kao'halahala's alleged violation of § 3-3 of the Charter of the
County of Maui residency requirements, which automatically and
instantly created a forfeiture and vacancy of his office.
Dejetley, 122 Hawai'i at 266, 226 P.3d at 436.  In Office of
Hawaiian Affairs v. Cayetano, 94 Hawai'i 1, 8, 6 P.3d 799, 806
(2000), the State sought a judicial declaration that the Office
of Hawaiian Affairs trustees appropriately held their elected
offices after the U.S. Supreme Court held trustees' eligibility
requirements to be unconstitutional.  The Hawai'i Supreme Court
concluded, "the State should seek relief through a quo warranto
petition filed pursuant to HRS chapter 659."  Id.

Here, the circuit court dismissed the Petition for lack
of jurisdiction pursuant to HRCP Rule 12(b)(1).  However,
HRS § 603-21.7 expressly grants the circuit court jurisdiction to
entertain such petitions.[7]

Therefore, we conclude the circuit court reversibly
erred by entering the Order Granting Motion to Dismiss Petition.

---

[6]     Circuit courts, and not County Boards, hear complaints relating to
nomination papers.  See HRS § 12-8(h).

[7]     The circuit court did not dismiss the petition for failure to
state a claim pursuant to HRCP Rule 12(b)(6), and Say did not so move.  That
issue is not before us.  It was not raised and addressed below.  This case is
solely about the jurisdiction of the circuit court to entertain a Petition for
Quo Warranto pursuant to HRS § 603-21.7.

### III.   CONCLUSION

For the foregoing reasons, the (1) March 11, 2013 "Order Granting Respondent Calvin K.Y. Say's Motion to Dismiss Petition for Writ of Quo Warranto"; (2) February 20, 2013 denied "Petition for Writ of Quo Warranto;" and (3) July 5, 2013 Final Judgment, all entered in the Circuit Court of the First Circuit are vacated and remanded for further proceedings consistent with this opinion.

On the briefs:

Lance D. Collins
for Petitioners-Appellants.

Bert T. Kobayashi, Jr.
Maria Y. Wang
for Respondent-Appellee.