**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCAP-14-0001327
17-NOV-2016
09:29 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____


RAMONA HUSSEY, M. KA'IMILA NICHOLSON, NATALIA ANOTONIA HUSSEY-
BURDICK, BRENT S. DUPUIS, MARVIN D. HESKETT, and JOEL L.
MERCHANT
Respondents/Petitioners-Appellants,

vs.

CALVIN K.Y. SAY,
Respondent/Respondent-Appellee,

and

HOUSE OF REPRESENTATIVES OF THE HAWAI'I STATE LEGISLATURE,
Petitioiner/Intervenor-Appellee.

_____

SCAP-14-0001327

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0001327; SP. NO. 12-1-0736 KTN)

NOVEMBER 17, 2016

RECKTENWALD, C.J., POLLACK, AND WILSON, JJ.,
CIRCUIT JUDGE BROWNING, IN PLACE OF NAKAYAMA, J., RECUSED, AND
CIRCUIT JUDGE TRADER, IN PLACE OF McKENNA, J., RECUSED.

OPINION OF THE COURT BY WILSON, J.

## I.    Introduction

This case concerns a petition for a writ of quo warranto challenging Representative Calvin K.Y. Say's (Say) authority to hold office as a representative of the Twentieth District of Hawaiʻi.  Quo warranto is "a common-law writ used to inquire into the authority by which a public office is held or a franchise is claimed."  Dejetley v. Kahoʻohalahala, 122 Hawaiʻi 251, 265, 226 P.3d 421, 435 (2010) (quoting *Black's Law Dictionary* 1371 (6th ed. 1990)).  Hawaiʻi Revised Statutes (HRS) § 659-1 (1993) defines a writ of quo warranto as "an order issuing in the name of the State by a circuit court and directed to a person who claims or usurps an office of the State or of any subdivision thereof . . . inquiring by what authority the person claims the office or franchise."

Petitioners-Appellants Ramona Hussey, M. Kaʻimila Nicholson, Natalia Antonia Hussey-Burdick, Brent S. Dupuis, Marvin D. Heskett, and Joel L. Merchant (collectively, Appellants) appeal from the Circuit Court of the First Circuit's (circuit court) "Conclusions of Law and Order Granting House of Representatives of the Twenty Seventh Legislature, State of Hawaii's Motion to Dismiss, and Respondent Calvin K.Y. Say's Motion to Dismiss Petition for Writ of Quo Warranto for

Nonjusticiability Pursuant to the Hawaiʻi Rules of Civil Procedure (HRCP) Rules 12(b)(1) and 12(b)(6)."[1]

We consider the following issues upon transfer of the case from the Intermediate Court of Appeals (ICA): (1) whether "the law of the case" doctrine operates to foreclose Say's arguments premised on article III, section 12 of the Hawaiʻi Constitution, (2) whether the legitimacy of Say's qualifications to hold a seat in the State of Hawaiʻi House of Representatives presents a nonjusticiable political question, (3) whether the Office of the Attorney General of the State of Hawaiʻi was permitted to represent the House of Representatives against Appellants, and (4) whether permissive intervention by the House of Representatives was proper.

We resolve the issues as follows: (1) the "law of the case" doctrine does not foreclose Say's arguments, (2) the legitimacy of Say's qualifications to hold office presents a nonjusticiable political question, (3) the Attorney General was not prohibited from representing the House of Representatives, and (4) the grant of permissive intervention to the House of Representatives was proper.

## II. Background

---

[1]    The Honorable Karen T. Nakasone presided.

## A.   Trial Court Proceedings

Say has served as the representative for the Twentieth District of Hawaiʻi since 1976.  In December 2012, Appellants filed a petition for a writ of quo warranto in the circuit court alleging that Say lived and lives in the Twenty-Fifth District of Hawaiʻi.  Appellants challenged Say's authority to hold office as a representative of the Twentieth District because he was not a "qualified voter" of the Twentieth District as required by article III, section 6 of the Hawaiʻi Constitution.[2]

Say filed a motion to dismiss the petition in the circuit court, arguing Appellants' quo warranto petition challenged his voter registration, and was therefore subject to the exclusive jurisdiction of the Office of the City Clerk, City and County of Honolulu, pursuant to HRS § 11-25 (2012).[3]

The circuit court granted Say's motion to dismiss, ruling the petition was a challenge to Say's voter registration

_____

[2]   Article III, section 6 of the Hawaiʻi Constitution provides in relevant part:

> No person shall be eligible to serve as a member of the house of representatives unless the person has been a resident of the State for not less than three years, has attained the age of majority and is, prior to filing nomination papers and thereafter continues to be, a qualified voter of the representative district from which the person seeks to be elected[.]

[3]   HRS § 11-25 provides that "[a]ny registered voter may challenge the right of a person to be or to remain registered as a voter in any precinct . . . . The challenge shall be delivered to the clerk . . . . The clerk shall, as soon as possible, investigate and rule on the challenge."

and that challenges to voter registration are exclusively within the province of the county clerk. The order stated in part:

1. The Petition for Quo Warranto is, on its face, a challenge to Respondent's voter registration. Challenges to voter registration are exclusively within the province of the clerks of the respective counties pursuant to Haw. Rev. Stat. § 11-25.

2. The circuit courts can never have jurisdiction over challenges to voter registration. A person ruled against by the county clerk may appeal to the board of registration pursuant to Haw. Rev. Stat. § 11-26, and an appeal from a board of registration decision must be made to the intermediate court pursuant to Haw. Rev. Stat. § 11-51.

## B. Appeal to the Intermediate Court of Appeals

In April 2014, the ICA vacated the circuit court's dismissal, ruling that the circuit court did, in fact, have jurisdiction to hear petitions for quo warranto. Hussey v. Say, 133 Hawaiʻi 229, 234, 325 P.3d 641, 646 (App. 2014), reconsideration denied, 133 Hawaiʻi 452, 330 P.3d 390 (App. 2014) (Hussey I). The ICA concluded that Appellants' actual challenge was to Say's qualification to remain seated as a house representative, and not to Say's voter registration. Id. at 233, 325 P.3d at 645. The ICA explained, "[o]ur courts have jurisdiction over the interpretation of constitutional provisions for the qualification of candidates for the house of representatives and of elected representatives to serve in that capacity" and "[c]ircuit courts have jurisdiction over 'actions or proceedings in or in the nature of . . . quo warranto.'" Id. at 233-34, 325 P.3d at 645-46 (citing HRS § 603-21.7(b) (1993)).

The ICA held the circuit court reversibly erred by granting Say's motion to dismiss.  Id. at 235, 325 P.3d at 647.

Say moved for reconsideration before the ICA, arguing for the first time that article III, section 12[4] of the Hawaiʻi Constitution dictates that the House of Representatives, not the circuit court, had the exclusive jurisdiction to address the quo warranto petition in his case.  The ICA denied the motion without comment.

**C.  Remand to the Circuit Court**

**1.  Proceedings on Remand**

On remand, the circuit court issued a writ of quo warranto against Say "to show by what warrant and authority [he claimed] title to the office of member of the House of Representatives for the Twentieth Representative District."

On July 18, 2014, the House of Representatives moved to intervene in the case.  Appellants subsequently moved to disqualify the Attorney General from representing the House of Representatives.  Appellants maintained the Attorney General's

---

[4]     Article III, section 12 of the Hawaiʻi Constitution provides in relevant part:

> Each house shall be the judge of the elections, returns and qualifications of its own members and shall have, for misconduct, disorderly behavior or neglect of duty of any member, power to punish such member by censure or, upon a two-thirds vote of all the members to which such house is entitled, by suspension or expulsion of such member.

representation of the House of Representatives created a conflict of interest with the state interest Appellants assumed pursuant to their writ of quo warranto. Appellants argued that the Attorney General's client was the State of Hawaiʻi, and therefore he could not represent one state interest against another without creating a conflict of interest. The circuit court denied the motion to disqualify the Attorney General. The court explained that the House of Representatives had its own distinct "[c]onstitutionally conferred interest in this proceeding" under article III, section 12 of the Hawaiʻi Constitution. The court concluded that because the parties' interests were distinct and because Appellants and the House of Representatives had their own separate counsel, there was no conflict of interest.

At the August 29, 2014 hearing, the circuit court rejected the House of Representatives' claim for intervention as of right, ruling there was no evidence showing a possible impairment of its ability to protect its interests. However, the court granted the House of Representatives' motion to intervene on a permissive basis. The court also rejected Appellants' "law of the case" argument that the ICA's denial of Say's motion for reconsideration foreclosed him from making an article III, section 12 argument again on remand. The circuit

court concluded that the article III, section 12 issue was a "defense . . . outside of the original appeal" and that the "summary denial by the appellate court under these circumstances cannot be construed as a decision on the merits of the new defense."

## 2. Circuit Court's Rulings on Motions to Dismiss

Say filed two motions to dismiss Appellants' petition for quo warranto on July 18, 2014. The first was premised on collateral estoppel because earlier challenges to his residency were rejected in other forums. In the second motion, Say made the argument that the House of Representatives, and not the court, was the proper authority to preside over the quo warranto petition per article III, section 12 of the Hawaiʻi Constitution.

The House of Representatives also filed a motion to dismiss Appellants' quo warranto petition on August 29, 2014, arguing that article III, section 12 of the Hawaiʻi Constitution confers exclusive jurisdiction to judge the qualifications of its members upon the House of Representatives, therefore rendering the question nonjusticiable by the court.

At its September 18, 2014 hearing, the circuit court orally denied Say's motion to dismiss based on collateral estoppel, concluding the current proceedings involved different issues and parties than those in the prior adjudications. Say's

8

and the House of Representatives' motions premised on nonjusticiability were heard together.  On September 30, 2014, the circuit court granted Say's and the House of Representatives' motions to dismiss the quo warranto petition.  The court ruled that the legitimacy of Say's qualifications to hold office as a representative presented a nonjusticiable political question, and accordingly dismissed the quo warranto petition.  Judgment was entered on October 31, 2014, and Appellants appealed to the ICA on November 28, 2014.

At the ICA, the parties filed applications for transfer which were subsequently granted by this court on June 9, 2015.

### III.  Standards of Review

#### A.  The Law of the Case

The law of the case doctrine holds that "a determination of a question of law made by an appellate court in the course of an action becomes the law of the case and may not be disputed by a reopening of the question at a later stage of the litigation."  Fought & Co. v. Steel Eng'g & Erection, Inc., 87 Hawaiʻi 37, 48-49, 951 P.2d 487, 498-99 (1998) (citation omitted).  "This doctrine applies to issues that have been decided either expressly or by necessary implication."  Id.  In other words, "the usual practice of courts to refuse to disturb all prior rulings in a particular case" is referred to as the

"law of the case" doctrine.  <u>Chun v. Bd. of Trs. of the Emps.'</u>

<u>Ret. Sys. of State of Hawaii</u>, 92 Hawaiʻi 432, 441, 992 P.2d 127,

136 (2000) (citations omitted).  "Unless cogent reasons support

the second court's action, any modification of a prior ruling of

another court of equal and concurrent jurisdiction will be

deemed an abuse of discretion."  <u>Wong v. City & Cty. Of</u>

<u>Honolulu</u>, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983) (emphasis

omitted).  Consequently, the "law of the case" doctrine "does

not preclude modification of a prior ruling in all instances."

<u>Stender v. Vincent</u>, 92 Hawaiʻi 355, 361, 992 P.2d 50, 56 (2000).

## B.    Constitutional Questions

The appellate court reviews "questions of

constitutional law <u>de novo</u>, under the right/wrong standard."

<u>Jou v. Dai-Tokyo Royal State Ins. Co.</u>, 116 Hawaiʻi 159, 165, 172

P.3d 471, 477 (2007) (citation omitted).

## C.    The Attorney General's Representation of the House of Representatives

Appellate courts apply the abuse of discretion

standard for reviewing a judge's denial of a motion for

disqualification.  <u>State v. Ortiz</u>, 91 Hawaiʻi 181, 188, 981 P.2d

1127, 1134 (1999).  "Under the abuse of discretion standard, the

trial court may not be reversed by an appellate court unless the

trial court clearly exceeded the bounds of reason or disregarded

rules or principles of law or practice to the substantial

detriment of a party litigant." Kealoha v. Cty. of Haw., 74 Haw. 308, 318, 844 P.2d 670, 675 (1993) (citation omitted).

### D. Permissive Intervention

Permissive intervention is subject to the discretion of the trial court under HRCP Rule 24(b)(2) (2006). A grant of permissive intervention is reviewed for abuse of discretion. Baehr v. Miike, 80 Hawaiʻi 341, 345, 910 P.2d 112, 116 (1996).

## IV. Discussion

### A. The ICA's Order Denying Say's Motion for Reconsideration is Not the Law of the Case

In Hussey I, the ICA held the circuit court had jurisdiction to hear petitions for quo warranto, stating "[o]ur courts have jurisdiction over the interpretation of constitutional provisions for the qualification of candidates for the house of representatives and of elected representatives to serve in that capacity." 133 Hawaiʻi at 233, 325 P.3d at 645. Say subsequently filed a Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 40 (2000)[5] motion for reconsideration, making the argument that "[t]o the extent the petition is a challenge to

---

[5] HRAP Rule 40 reads in relevant part:

> Motion for Reconsideration.
> (b) Contents. The motion shall state with particularity the points of law or fact that the moving party contends the court has overlooked or misapprehended, together with a brief argument on the points raised. The motion shall be supported by a declaration of counsel to the effect that it is presented in good faith and not for purposes of delay.

Say's qualifications to serve as a member of the House of Representatives, the House is the judge of his qualifications pursuant to Art. III, sec. 12 of the Hawaii Constitution." The ICA summarily denied Say's motion without comment.

On remand before the circuit court, Appellants contended the ICA's denial of Say's motion for reconsideration precluded him from raising the article III, section 12 argument again because the ICA's ruling on the issue was the "law of the case." Appellants explained that the "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988) (citation omitted). In Appellants' view, the ICA's holding that circuit courts have jurisdiction in quo warranto cases and its denial of Say's motion for reconsideration established that the circuit court, and not the House of Representatives, was the proper authority to investigate Say's qualifications to hold office. The circuit court rejected the argument that the ICA's denial of Say's motion for reconsideration was the "law of the case," stating:

> [T]he ICA's summary denial of Respondent Say's motion for reconsideration cannot be construed as a decision on the merits of the Article III, Section 12 jurisdictional argument. Such argument was newly raised in the reconsideration and was not a part of the trial and appellate record before the ICA in Hussey v. Say, supra.

According to Appellants, the circuit court wrongly interpreted the "law of the case" doctrine in concluding that the law of the case exists only when there is an express decision on the merits of a claim.  Appellants maintain the circuit court was precluded from considering Say's article III, section 12 argument on remand where the ICA had formerly decided that courts have jurisdiction over quo warranto petitions.

The "law of the case" doctrine holds that "a determination of a question of law made by an appellate court in the course of an action becomes the law of the case and may not be disputed by a reopening of the question at a later stage of litigation."  Tabieros v. Clark Equip. Co., 85 Hawaiʻi 336, 352 n.8, 944 P.2d 1279, 1295 n.8 (1997).  Thus, as the United States Supreme Court held, the "law of the case" doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided."  Christianson, 486 U.S. at 802.  In Ditto v. McCurdy, 98 Hawaiʻi 123, 128, 44 P.3d 274, 279 (2002), this court held "the law of the case concept applies to single proceedings, and operates to foreclose re-examination of decided issues either on remand or on a subsequent appeal but does not encompass issues presented for decision but left unanswered by the appellate court."  An appellate court may decide an issue "either expressly or by necessary implication."  Id.  A question

is decided explicitly or implicitly when it is "specifically determined in a prior decision . . . [or] necessarily determined to arrive at the decision."  Int'l Union v. State, 535 N.W.2d 210, 212 (Mich. Ct. App. 1995).

Because Say's motion for reconsideration was denied without comment, the ICA did not explicitly decide the issue of whether article III, section 12 of the Hawaiʻi Constitution gives the House of Representatives exclusive jurisdiction over investigations of the qualifications of its members.  Therefore, the question before us is whether the ICA implicitly resolved the article III, section 12 issue as a necessary step in reaching its conclusion that "[c]ircuit courts have jurisdiction over 'actions or proceedings in or in the nature of . . . quo warranto'" pursuant to HRS § 603-21.7(b).[6]  Hussey I, 133 Hawaiʻi at 233-34, 325 P.3d 645-46.

---

[6]     HRS § 603-21.7(b) provides in relevant part:

Nonjury cases.  The several circuit courts shall have jurisdiction, without the intervention of a jury except as provided by statute, as follows:

. . . .

(b) Of actions or proceedings in or in the nature of habeas corpus, prohibition, mandamus, quo warranto, and all other proceedings in or in the nature of applications for writs directed to courts of inferior jurisdiction, to corporations and individuals, as may be necessary to the furtherance of justice and the regular execution of the law.

In Hussey I, the ICA considered the language of HRS §
603-21.7(b) and cases involving challenges to the qualifications
of county council representatives[7] and state trustees.[8]  133
Hawaiʻi at 234, 325 P.3d at 646.  These authorities clearly
establish the general rule that circuit courts have jurisdiction
over petitions for quo warranto.  However, article III, section
12 of the Hawaiʻi Constitution states that "each house shall be
the judge of the . . . qualifications of its own members."
Neither HRS § 603-21.7(b) nor the cases the court considered
raised the issue of whether article III, section 12 supersedes
the general rule and creates an exception granting the House of
Representatives jurisdiction over quo warranto petitions
involving its members.  Furthermore, Say did not raise this
argument to the court until after the ICA issued its opinion.
Thus, it appears the ICA applied the general rule granting
circuit courts jurisdiction over petitions for quo warranto
because it was unaware that a constitutional exception existed

---

[7]      In Dejetley, 122 Hawaiʻi at 266, 226 P.3d at 436, the court
concluded that a writ of quo warranto "seem[ed] to be an appropriate remedy"
for the defendant's alleged violation of section 3-3 of the Charter of the
County of Maui residency requirements, which automatically and instantly
created a forfeiture and vacancy of his office.

[8]      In Office of Hawaiian Affairs v. Cayetano, 94 Hawaiʻi 1, 5, 6 P.3d
799, 803 (2000), the State sought a judicial determination that the Office of
Hawaiian Affairs trustees appropriately held their elected offices after the
U.S. Supreme Court held the trustees' eligibility requirements to be
unconstitutional.  The Hawaiʻi Supreme Court concluded, "the State should seek
relief through a quo warranto petition filed pursuant to HRS chapter 659."
Id. at 8, 6 P.3d at 806.

for cases involving legislators.  It follows that, where the ICA was uninformed of the article III, section 12 issue, it could not have implicitly decided the constitutional issue as a necessary step in resolving the appeal.

Because the ICA neither expressly nor implicitly decided the issue of whether circuit courts have jurisdiction over petitions for quo warranto involving House representatives in light of article III, section 12 of the Hawaiʻi Constitution, its denial of Say's motion for reconsideration cannot be viewed as the "law of the case."  Moreover, since this was a new argument made on appeal from a motion to dismiss, the reinstatement of proceedings on remand would have allowed and did allow Say to present and argue the issue at the circuit court.  Accordingly, Say was not foreclosed from raising his article III, section 12 argument before the circuit court on remand.

B.  **Representative Say's Residency Issue Presents a Nonjusticiable Political Question**

On remand from Hussey I, the circuit court concluded that the issue of Say's qualification to hold office constitutes a political question and thus is nonjusticiable by the courts. The circuit court accordingly held that the legislature has exclusive jurisdiction to judge Say's qualifications pursuant to article III, section 12 of the Hawaiʻi Constitution.  Appellants

16

maintain the circuit court reversibly erred in reaching this conclusion. They argue the issue of Say's qualification to hold office is justiciable by the courts because HRS § 659 provides judicially discoverable and manageable standards for executing quo warranto proceedings involving political figures. Furthermore, Appellants contend allowing the House of Representatives to judge Say's qualifications to hold office erodes the separation of powers doctrine because it leaves the House's power to determine its members' qualifications unchecked.

"Justiciability" is a legal term of art relating to the court's position as one of the three coequal branches of government. It is a doctrine meant to assure that the courts "not intrude into areas committed to the other branches of government." Trs. of Office of Hawaiian Affairs v. Yamasaki, 69 Haw. 154, 168, 737 P.2d 446, 455 (1987) (citing Flast v. Cohen, 392 U.S. 83, 95 (1968)). See also Haw. Const. art. III, art. V, and art. VI.[9] A political question arises in the courts when the

---

[9] The Hawaiʻi Constitution reads in relevant part:

Article III, section 1: The legislative power of the State shall be vested in a legislature, which shall consist of two houses, a senate and a house of representatives. Such power shall extend to all rightful subjects of legislation not inconsistent with this constitution or the Constitution of the United States.

Article V, section 1: The executive power of the State shall be vested in a governor. The governor shall be elected by the

(continued. . .)

17

resolution of a dispute "threatens confrontation with the other parts of government . . . ." Yamasaki at 169, 737 P.2d at 455. A case involving a nonjusticiable political question must be dismissed when there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department." Id. at 170, 737 P.2d at 455 (quoting Baker v. Carr, 369 U.S. 186, 217 (1962)).

Generally, circuit courts have jurisdiction over quo warranto petitions. HRS § 603-21.7(b). However, in this case, there is a clear "textually demonstrable constitutional commitment" of the issue to the legislature because article III, section 12 explicitly commits the determination of qualifications of House members to the House of Representatives itself. The legislature, not the court, possesses the authority to judge the qualifications of its members. In Harris v. Cooper, 14 Haw. 145, 148 (Haw. Terr. 1902), the court explained

---

(. . .continued)

> qualified voters of this State at a general election. The person receiving the highest number of votes shall be the governor. In case of a tie vote, the selection of the governor shall be determined as provided by law.

> Article VI, section 1: The judicial power of the State shall be vested in one supreme court, one intermediate appellate court, circuit courts, district courts and in such other courts as the legislature may from time to time establish. The several courts shall have original and appellate jurisdiction as provided by law and shall establish time limits for disposition of cases in accordance with their rules.

that "[t]he very fact that 'each house shall be the judge of the elections, returns, and qualifications of its members[10] is sufficient reason why neither the Secretary nor the courts should undertake to pass upon the question of the eligibility of a candidate" and that "[t]he jurisdiction of each house of the legislature is exclusive in such cases.  Each branch of the government must respect the prerogatives of each of the others."

Courts in other jurisdictions faced with interpreting language similar or identical to that of article III, section 12 of the Hawaiʻi Constitution have held that the legislature, not the court, has the power to judge the qualifications of its members.  In Buskey v. Amos, 310 So. 2d 468, 469 (Ala. 1975), the Supreme Court of Alabama rejected a similar quo warranto challenge, holding "[i]n view of this constitutional provision this court is compelled to hold that it lost jurisdiction of this appeal when the appellee became a member of the State Senate."[11]  The Supreme Court of Iowa ruled in State ex rel. Turner v. Scott, 269 N.W.2d 828, 832 (Iowa 1978) that the Iowa

---

[10]     The court interpreted the language of the Hawaiʻi Organic Act, ch. 339, 31 Stat. 141, § 15 (1900), the predecessor to article III, section 12 of the Hawaiʻi Constitution.  The section reads "[t]hat each house shall be the judge of the elections, returns, and qualifications of its own members."

[11]     Article IV, section 51 of the Alabama Constitution provides in relevant part that "[e]ach house shall choose its own officers and shall judge the election, returns, and qualifications of its members."

Constitution "clearly leaves to the Senate the determination as to whether a member is qualified" and that the issue is "nonjusticiable and improper for judicial resolution."[12]  The holdings of these courts support our conclusion that, based on the plain language of article III, section 12 of the Hawaiʻi Constitution and our jurisdiction's case law, the House of Representatives maintains the exclusive authority to determine the qualifications of its members to hold office.

Appellants cite Ford v. Leithead-Todd, No. CAAP-15-0000561, 2016 WL 4705136 at *6 (Haw. Ct. App. Sept. 8, 2016), for the proposition that the Hawaiʻi constitution cannot grant the House of Representatives exclusive authority to review its representatives' qualifications.  Appellants maintain that this policy would leave the House's discretion unchecked, thus violating the separation of powers doctrine.

In Leithead-Todd, the ICA held that the circuit court, and not the Mayor or County Council, had jurisdiction over quo warranto proceedings involving a challenge to the Director of the Department of Environmental Management's (Director) qualifications to hold office.  Id. at *7.  The Charter of the County of Hawaiʻi (CCH) expressly granted the Mayor authority to

_____

[12]  Article III, section 7 of the Iowa Constitution provides that "[e]ach house shall choose its own officers, and judge of the qualification, election, and return of its own members.  A contested election shall be determined in such manner as shall be directed by law."

remove the Director.[13]  However, the ICA held the Mayor could not assess the qualifications of the Director in response to a quo warranto inquiry because he had previously approved her qualifications when he appointed her  Id.  According to the ICA, granting the Mayor this "unreviewable discretion in determining the qualifications of the Director" would essentially render the CCH provisions identifying qualifications for the office of the Director meaningless, leading to an absurd result.  Id.  Thus, the ICA held that the question of the Director's qualification to hold office must be evaluated by the court, and the CCH could not textually commit this authority to the Mayor.  Id.

Following this reasoning, Appellants maintain the House of Representatives should not have the authority to review Say's qualifications to be a representative because this policy would similarly grant the House unfettered review of the qualifications of its members.  However, unlike the Director in Leithead, Say was not appointed by the same authority that would review his qualifications.  He was elected by his constituents, while his qualifications will be reviewed by the House.  Thus,

---

[13]    CCH § 6-10.3 (2010) reads in relevant part:

The director of environmental management shall be appointed by the mayor, confirmed by the council, and may be removed by the mayor.  The director shall have had a minimum of five years of administrative experience in a related field and an engineering degree or a degree in a related field.

the danger of "unreviewable discretion" present in <u>Leithead-Todd</u> does not exist here because Say's qualifications will not be reviewed by the same individuals who selected him for office.[14]

Accordingly, the House of Representatives has exclusive jurisdiction to decide whether Say satisfied the constitutional residency requirements of a sitting House member. On this basis, the ruling of the ICA in <u>Hussey I</u>, 133 Hawaiʻi at 235, 325 P.3d at 647 granting quo warranto jurisdiction is overruled.

## C. The Attorney General is Permitted to Represent the House of Representatives

Appellants argue the circuit court erred by denying Appellants' motion to disqualify the office of the Attorney General and by concluding it could represent the House of Representatives. Appellants base their claim on two arguments.

First, Appellants maintain the Attorney General may represent the legislature as a whole, but is not statutorily authorized to represent only the House of Representatives.

---

[14] In <u>Leithead-Todd</u>, the ICA concluded that allowing the Mayor to assess the qualifications of a Director he had appointed would leave the Mayor's discretion unchecked, and therefore the question should be adjudicated by the court. However, the ICA suggested that this holding does not extend to situations involving quo warranto writs granted against state legislators: In a footnote, the ICA cited the Iowa Supreme Court's holding in <u>Scott</u>, 269 N.W.2d at 832 that a quo warranto action to remove a state senator from office was a political question nonjusticiable by the courts. The ICA's reference to <u>Scott</u> implies that its holding in <u>Leithead-Todd</u> does not apply to the issue of a state representative's qualification to hold office. <u>Leithead-Todd</u>, No. CAAP-15-0000561, 2016 WL 4705136 at *9 n.6.

Citing HRS § 28-4 (2009), Appellants explain that the Attorney General is tasked to "give advice and counsel to the heads of departments, district judges, and other public officers, in all matters connected with their public duties, and otherwise aid and assist them in every way requisite to enable them to perform their duties faithfully." Additionally, per HRS § 26-7 (2009), the Attorney General has the responsibility to "administer and render state legal services, including furnishing of written legal opinions to the governor, legislature, and such state departments and officers as the governor may direct[.]" Appellants assert this statutory language should be strictly construed because the powers of the Attorney General originate from English common law and "statutes in derogation of the common law must be strictly construed and, where it does not appear that there was a legislative purpose in the statute to supersede the common law, the common law applies." Doi v. Hawaiian Ins. & Guar. Co., 6 Haw. App. 456, 465, 727 P.2d 884, 889 (1986). In Appellants' view, strict construal of the statutory language authorizes the Attorney General to represent the "legislature" as a whole per HRS § 26-7, but not the House of Representatives alone.

HRS § 26-7 instructs that the department of the attorney general "shall administer and render state legal services, including furnishing of written legal opinions to the

governor, legislature, and such state departments and officers as the governor may direct . . . . The attorney general shall be charged with such other duties and have such authority as heretofore provided by common law or statute." HRS § 26-7 (emphasis added). We have noted that the common law of this jurisdiction broadly interprets the Attorney General's powers of representation:

> [I]n addition to those conferred on it by statute, the office [of the Attorney General] is clothed with all the powers and duties pertaining thereto at common law; and, as the chief law officer of the State, the Attorney General, in the absence of express legislative restriction to the contrary, may exercise all such power and authority as the public interests may from time to time require.

Chun v. Bd. of Trs.' of Emps. Ret. Sys. of State of Hawaii, 87 Hawaiʻi 152, 169, 952 P.2d 1215, 1233 (1998) (quoting Darling Apartment Co. v. Springer, 22 A.2d 397, 403 (Del. 1941)). There is no statute or common law rule that expressly restricts the Attorney General to representing the legislature as a whole. Accordingly, the Attorney General's broad jurisdiction to represent the interests of the state includes representation of the House of Representatives in this case.

Appellants' second argument is that the Attorney General's representation of the House of Representatives created a conflict of interest in violation of the Hawaiʻi Rules of Professional Conduct (HRPC), thus precluding the Attorney General from representing the House of Representatives.

24

Appellants maintain the Attorney General's representation of the House of Representatives results in a conflict because the Attorney General's "client" is the State of Hawaiʻi, and therefore the Attorney General cannot represent the House of Representatives if in so doing the Attorney General's office takes a position adverse to the general state interest Appellants defend via their writ of quo warranto.

Appellants cite HRPC Rule 1.7 (b)(3)(1994) in support of the proposition that the Attorney General is barred from representing one state interest against another.  HRPC Rule 1.7 (b)(3) provides in relevant part that "a lawyer may represent a client if . . . the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal."  In the case at bar, the Attorney General does not represent multiple clients.  The Office of the Attorney General represents the House of Representatives, and Appellants are represented by independent counsel.  HRPC Rule 1.7 (b)(3) thus does not apply.[15]  Therefore, the Attorney

---

[15]     Furthermore, the Attorney General's duty to protect the public interest does not preclude the Office of the Attorney General from representing the House of Representatives in this case.  The Attorney General's common law duty to protect the public interest is subject to his or her definition of what is in the best interests of the state or public at large.  See Chun, 87 Hawaiʻi at 169, 952 P.2d at 1233.  Thus, Appellants' writ

(continued. . .)

General is not disqualified from representing the House of

Representatives.

**D.  The Circuit Court Did Not Err in Granting Permissive
Intervention to the House of Representatives**

Appellants assert that the circuit court's grant of

permissive intervention to the House of Representatives under

HRCP Rule 24[16] constituted reversible error because the circuit

court lacked any factual basis to grant intervention.  However,

Appellants failed to provide any argument or analysis in support

of this statement in their opening brief.

Under the Hawaiʻi Rules of Appellate Procedure, points

not argued may be deemed waived.  HRAP Rule 28(b)(7) (2010).

This court is "not obliged to address matters for which the

---

(. . .continued)

of quo warranto does not <u>ipso facto</u> establish their position to be in the
public interest and is not binding upon the Attorney General.

[16]   HRCP Rule 24(b) states:

(a)Permissive Intervention.  Upon timely application anyone
may be permitted to intervene in an action: (1) when a
statute confers a conditional right to intervene; or (2)
when an applicant's claim or defense and the main action
have a question of law or fact in common.  When a party to
an action relies for ground of claim or defense upon any
statute, ordinance, or executive order administered by an
officer, agency or governmental organization of the State
or a county, or upon any regulation order, requirement or
agreement issued or made pursuant to the statute, ordinance
or executive order, the officer, agency or governmental
organization upon timely application may be permitted to
intervene in the action.  In exercising its discretion the
court shall consider whether the intervention will unduly
delay or prejudice the adjudication of the rights of the
original parties.

appellants have failed to present discernible arguments." Exotics Hawaiʻi-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawaiʻi 277, 288, 172 P.3d 1021, 1032 (2007).

Furthermore, a grant of permissive intervention under HRCP Rule 24(b) only requires that "an applicant's claim or defense and the main action have a question of law or fact in common." In this case, the House of Representatives and Appellants contested the legal question of whether the courts or the legislature possess jurisdiction over quo warranto petitions involving state representatives. Thus, the House of Representatives' claim shared a question of law in common with the main action of the case, and permissive intervention was proper. In exercising its discretion to grant permissive intervention, the court must consider whether the intervention will "unduly delay or prejudice the adjudication of the rights of the original parties." HRCP Rule 24(b). There is no evidence or allegation that the circuit court's grant of permissive intervention caused undue delay or prejudiced the adjudication of the rights of the original parties in this case. Therefore, the circuit court did not abuse its discretion in granting permissive intervention to the House of Representatives.

## V. Conclusion

Accordingly, the circuit court's order entered on September 30, 2014 granting Say's and the House of Representatives' motions to dismiss is affirmed.

| | |
|---|---|
| Lance D. Collins,<br>for appellants | /s/ Mark E. Recktenwald |
| | /s/ Richard W. Pollack |
| Deirdre Marie-Iha,<br>for appellee | /s/ Michael D. Wilson |
| | /s/ Robert M. Browning |
| | /s/ Rom A. Trader |

